UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


T.A. CHARLOT, LLC                                    CIVIL ACTION

VERSUS                                               NO. 21-985

TRANSPORTATION CONSULTANTS, INC.                     SECTION A (5)


**ORDER AND REASONS**

The following motions are before the Court: **Motion for Summary Judgment Based on Res Judicata (Rec. Doc. 14)** and **Motion to Stay Discovery and Disclosures (Rec. Doc. 15)** filed by Defendant Transportation Consultants, Inc. ("TCI"). Plaintiff T.A. Charlot, LLC opposes both motions. (Rec. Doc. 17). The motions, submitted for consideration on October 27, 2021, are before the Court on the briefs without oral argument. Given that this action is stayed pending the resolution of the motion for summary judgment, Rec. Doc. 26, the Motion to Stay Discovery and Disclosures (Rec. Doc. 15) is DENIED AS MOOT. For the following reasons, the Motion for Summary Judgment Based on Res Judicata (Rec. Doc. 14) is GRANTED.

I.      **BACKGROUND**

Plaintiff T.A. Charlot, LLC has filed suit against Transportation Consultants, Inc. ("TCI") alleging that TCI violated the Federal Motor Carrier Safety Act's Truth-in-Leasing regulations, found at 49 C.F.R. § 376.12, by failing to include a schedule for compensation, cost and deduction, reporting requirements, and equipment in the parties'

lease agreement. (Rec. Doc. 1 ¶ 23).  According to the complaint, Plaintiff leased motor vehicle equipment and drivers to TCI pursuant to a lease agreement entered into with TCI on January 2, 2019. (Rec. Doc. 1 ¶¶ 9, 11). That agreement[1] was later terminated by a representative of TCI on May 22, 2020. (*Id.* ¶ 17).

Plaintiff alleges that, during the time it provided services to TCI, Plaintiff was concerned that TCI was not paying Plaintiff the proper percentage of gross revenue for shipments made and that TCI was refusing to provide a copy of the rated freight bill. (*Id.* ¶ 14). According to Plaintiff, the parties' agreement did not have any reference or any required addendum outlining the specific basis of compensation for Plaintiff, as required by the Truth-in-Leasing regulations. (*Id.* ¶ 15). Plaintiff's managing member, Theron Charlot, allegedly requested this information from TCI and TCI refused to provide it. (*Id.* ¶ 16). Following that request, on May 22, 2020, TCI notified Plaintiff that the parties' agreement was being terminated immediately. (*Id.* ¶ 17). Mr. Charlot later filed a complaint with the U.S. Department of Transportation (US DOT) and US DOT confirmed that TCI failed to comply with its obligations under the Truth-in-Leasing regulations. (*Id.* ¶¶ 18–19). Because TCI failed to adhere to or perform the obligations established by 49 C.F.R. § 376.12, Plaintiff says its rights have been violated and it has suffered financial damages. (*Id.* ¶ 24). Plaintiff prays for damages, court costs and attorney's fees, and any other relief that this Court deems proper. (*Id.* ¶¶ A–D).

Prior to this federal action, Theron Charlot, Plaintiff's managing member, filed a suit, *pro se*, in the Civil District Court for the Parish of Orleans against TCI and two of TCI's employees, Laura Caluda and Jeffrey Louis. (Rec Doc. 14-5). In that action, Mr.

---

[1] *See* Rec. Doc. 1-1 for the lease agreement.

Charlot alleged that he provided transportation and freight services to TCI on a contractual basis from March 1, 2019, until May 22, 2020. (*Id.* at p. 3). On the last of these dates, a representative of TCI informed Mr. Charlot that TCI would no longer use his services. (*Id.* at p. 4). Mr. Charlot alleged that TCI was liable for terminating his services without cause and based on retaliation. (*Id.*). Mr. Charlot also alleged that during the time he provided services to TCI, he was underpaid in violation of 49 C.F.R. § 376.12(d). (*Id.* at p. 3). TCI removed the case to this Court, arguing that two of Mr. Charlot's claims—one for unfairly compensating him and one for failing to provide supporting invoices—arise from TCI's alleged failure to comply with the federal Truth-in-Leasing regulations and, therefore, Mr. Charlot's causes of action were based on federal law. (*Id.* at p. 95). Mr. Charlot moved to remand the case arguing that his claims arose under state law, and that the reference in his petition to § 376.12 served as the factual basis of damages. (*Id.* at p. 94).

This Court found that Mr. Charlot's explicit and implied references to § 376.12 in his petition were insufficient to confer federal question jurisdiction because federal law did not create the cause of action and because, even if resolving the claim requires some reference to federal law, the resolution of it will not be substantial based on the nature of Mr. Charlot's claim. (*Id.* at p. 97). The Court also noted that under the well-pleaded complaint rule, Mr. Charlot can eschew federal law and rely on state law for his claim, and Mr. Charlot expressed that he would do so in an amended petition. (*Id.*).  Accordingly, the motion to remand was granted. *(Id.* at 98).

On remand, TCI filed a motion for summary judgment seeking the dismissal of Mr. Charlot's entire action, arguing that (1) the law did not obligate TCI to pay Mr. Charlot

some arbitrary amount that he believes was fair, (2) legitimate reasons existed for the termination of the contract between TCI and Mr. Charlot, (3) no damages arise from the termination of the agreement, (4) there is no individual liability against TCI's employees, and finally, (5) Mr. Charlot is estopped from arguing violations of 49 C.F.R. § 376.12 because on remand he represented that he was not asserting any federal claims and would remove references to the federal regulations from his petition. (*Id.* at pp. 25–26).

Mr. Charlot then filed a Motion for Leave to File First Supplemental and Amending Petition for Damages (Rec. Doc. 14-6 at p. 1). The amended petition sought to add two new claims—Count II, Conversion, and Count IV, Violation of the Whistleblower Statute La. R.S. § 23:967. (*Id.* at pp. 7–8). The petition also deleted all explicit references to 49 C.F.R. § 376.12, but made assertions that TCI failed to pay Mr. Charlot a percentage of the gross revenue for shipments, failed to provide Mr. Charlot with a copy of the rated freight bill, and failed to provide a reference within the contract or an addendum outlining the basis of compensation for Mr. Charlot, despite being "legally obligated to do so." (*Id.* at pp. 4–5). The petition also mentioned the formal complaint that Mr. Charlot filed with US DOT and US DOT's response. (*Id.* at p. 6).[2]

On April 26, 2021, Civil District Court Judge Nakisha Ervin-Knott granted TCI's motion for summary judgment in its entirety, dismissing all of Mr. Charlot's claims with prejudice, including but not limited to the following: (1) his claims for being unfairly compensated and not being compensated on a percentage basis; (2) his claims for breach of contract and termination of his contract; (3) his claim for damages arising from the termination of his contract prior to the expiration of its term; (4) his claims and actions

---

[2] Mr. Charlot's complaint to US DOT and US DOT's response are attached as exhibits to the amended petition.

against the non-corporate, individual defendants; (5) his allegations and claims that arise under, concern, rely on or allege violations of federal law or federal regulations; and (6) his claim that he was an employee of TCI and not an independent contractor. (Rec. Doc. 14-6 at pp. 88–89). Judge Ervin-Knott also granted Mr. Charlot's motion for leave to file his first supplemental and amending petition but limited the petition to specifically Count II, Conversion, and Count IV, Violation of the Whistleblower Statute La. R.S. § 23:967. (*Id.* at p. 89). Mr. Charlot later filed a motion to voluntarily dismiss his remaining conversion and whistleblower claims, which Judge Ervin-Knott granted on July 8, 2021. (*Id.* at p. 91).

On October 6, 2021, Defendant TCI filed the instant Motion for Summary Judgment Based on Res Judicata (Rec. Doc. 14) and Motion to Stay Discovery and Disclosures (Rec. Doc. 15).[3] The basis of TCI's motion for summary judgment is that the instant action is barred by res judicata because Plaintiff's sole and managing member, Theron Charlot, previously litigated substantively the same claims in state court, and those claims were dismissed with prejudice on summary judgment. (Rec. Doc. 14-2 at p. 1). Specifically, TCI argues (1) that Plaintiff's action arises from the same transaction, occurrence, and contract that were the subject of Mr. Charlot's prior state court action; (2) that Mr. Charlot is Plaintiff T.A. Charlot, LLC's sole and managing member and he adequately represented the interests of his company in the prior state court action; and (3) that the prior state court action resulted in TCI's motion for summary judgment being granted and the dismissal of Mr. Charlot's claims with prejudice. (Rec. Doc. 14 ¶ 2).

---

[3] As previously mentioned, the Motion to Stay Discovery and Disclosures (Rec. Doc. 15) is DENIED AS MOOT because the Court granted the parties' joint motion to stay the proceedings pending the resolution of the motion for summary judgment. (*See* Rec. Doc. 26).

Plaintiff argues in opposition that the motion is premature because Plaintiff has not been afforded reasonable time to conduct discovery. (Rec. Doc. 17 at p. 4). However, Plaintiff asserts that res judicata does not apply here because the claims in each action are different, and the "identity of parties" requirement has not been met due to the distinction between Theron Charlot, a natural person, and T.A. Charlot, LLC, a juridical person. (*Id.* at p. 6). Although Plaintiff does not dispute that the lease agreement with TCI at issue here is the same contract referred to in Mr. Charlot's state court suit, Plaintiff argues that Mr. Charlot signed the contract in his representative capacity as the managing member of T.A. Charlot, LLC. Therefore, according to Plaintiff, the contract is between TCI and T.A. Charlot, LLC, not TCI and Mr. Charlot.

In reply, TCI argues, among other things, that Plaintiff's opposition and its attachments do not controvert TCI's evidence or asserted facts. Instead, according to TCI, Plaintiff actually confirms some of TCI's assertions—namely, that Mr. Charlot was T.A. Charlot, LLC's managing member and that TCI never challenged Mr. Charlot's capacity to litigate any claims arising under the contract in the prior state court action. (Rec. Doc. 20 at pp. 1–2).

The Court considers TCI's motion for summary judgment below.

## II.   **DISCUSSION**

In deciding the preclusive effect of a state court judgment in federal court, the court applies the law of the state that rendered the judgment. *Weaver v. Texas Cap. Bank N.A.*, 600 F.3d 900, 906 (5th Cir. 2011) (per curium) (citing *Marrese v. Am. Academy of Ortho. Surgeons*, 470 U.S. 373, 380 (1985)). The Full Faith and Credit Statute, 28 U.S.C. § 1738, is the major statutory source for this rule, as it "requires federal courts to give the same

preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000). The statute directs a federal court to refer to the preclusion law of the state in which judgment was rendered.  *Marrese*, 470 U.S. at 380; *See Kremer,* 456 U.S. at 481–482 ("It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."); *see also Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). This is true even when a suit raises a federal question, as in this case, or seeks to vindicate federal constitutional rights. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80–85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen*, 449 U.S. at 96–105, 101; *Marrese*, 470 U.S. at 373; *Sevin v. Par. of Jefferson*, 632 F. Supp. 2d 586, 594 (E.D. La. 2008) (Vance, J.).

Here, the prior judgment was entered in Louisiana state court. Consequently, this Court must look to Louisiana's preclusion statute, La. Rev. Stat. § 13:4231, to determine the effect that Judge Ervin-Knott's ruling will have in this federal litigation. Louisiana's res judicata statute provides in relevant part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent: . . . [i]f the judgment is in favor of the defendant, all causes of action existing at the time of the final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

La. Rev. Stat. § 13:4231(2) (as amended by Acts 1990, No. 521, § 521, eff. Jan. 1, 1991).[4]

As the Louisiana Supreme Court has explained, under § 13:4231, a second action is precluded when five elements are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Burguieres v. Pollingue*, 843 So. 2d 1049, 1053 (La. 2003).

The validity and finality of the state court judgment is not at issue here.[5] For purposes of res judicata, a valid judgment is one rendered by a court with jurisdiction over both the subject matter and the parties after proper notice was given, and a final judgment is one that disposes of the merits in whole or in part. La. Rev. Stat. § 13:4231 cmt. d (1990); La. Code Civ. Proc. art. 1841. It is undisputed that the judgment[6] in the first suit

---

[4] The statute embraces the broad usage of the phrase "res judicata" to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel). *Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp.*, 880 So. 2d 129, 136 (La. App. 1 Cir. 2004). Thus, res judicata used in the broad sense has two different aspects: (1) foreclosure of relitigating matters that have never been litigated but should have been advanced in the earlier suit; and (2) foreclosure of relitigating matters that have been previously litigated and decided. *Id.* (citing *Hudson v. City of Bossier,* 766 So. 2d 738, 743 (La. App. 2 Cir. 2000)). The portion of La. R.S. § 13:4231 quoted above pertains to true res judicata or claim preclusion, which is the type of res judicata implicated in this case.

[5] The Court notes that Plaintiff suggests a procedural capacity issue in the prior state court action but does not per se dispute the validity of the state court judgment. In its opposition, Plaintiff states that the lease agreement is between T.A. Charlot, LLC and TCI and that, under Louisiana law, LLC members have no right of action to assert a claim belonging to the LLC. (Rec. Doc. 17 at pp. 2, 4–6). Plaintiff raises this issue in support of its argument that TCI's only recourse was to challenge Mr. Charlot's lack of procedural capacity in the state court action, and that, because TCI failed to do so, TCI is precluded from challenging T.A. Charlot, LLC's right to proceed in this federal action through the vehicle of res judicata. (Rec. Doc. 17 at pp. 5–6). Regardless of how Plaintiff's argument is characterized, the Court finds that the prior judgment is valid.

[6] The final judgment in the case is represented by Rec. Doc. 14-6 at pp. 88–91.

is both valid and final. We therefore find that the first two res judicata elements are satisfied.

Before considering the remaining elements, it is important to note that the parties do not dispute that the same lease agreement with TCI is at issue in both the state court action and the present action or that Mr. Charlot signed the agreement. However, the parties do dispute whether Mr. Charlot or T.A. Charlot, LLC is a party to the contract. Plaintiff asserts that T.A. Charlot, LLC and TCI are the only parties to the agreement because Mr. Charlot signed the agreement in his representative capacity as managing member of T.A. Charlot, LLC. Defendant argues that, because Mr. Charlot is named in and signed the agreement, he, and not his company, entered into the agreement with TCI. Defendant argues that even if TCI contracted with Mr. Charlot's company, TCI never objected to Mr. Charlot's capacity to bring claims arising under the contract, and Mr. Charlot has the procedural capacity to sue as the representative and sole managing member of T.A. Charlot, LLC.

The lease agreement, attached as exhibits by both parties, is entitled "Independent Operator's Agreement" and states that the agreement is between "Charlot Theron," the independent operator in the contract, and Transportation Consultants, Inc. (Rec. Doc. 14-5; Rec. Doc. 17-1). The agreement is signed "T.A. Charlot" on behalf of the independent operator. (*Id.*). The title listed underneath the signature "T.A. Charlot" is "owner." (*Id.*) Nothing in the contract explicitly states that Mr. Charlot signed in his representative capacity. However, even if we take Plaintiff's assertion that he did so as true, the Court's analysis on the remaining res judicata factors would not change.

Because the same contract is at issue in both actions, the Court finds that the cause or causes of action asserted in this federal lawsuit existed at the time of the final judgment in the state court litigation. All of the allegations contained within the federal complaint involve the contract's alleged violations of § 376.12, the Truth-in-Leasing regulations. These violations, which are also mentioned in the state court petition, occurred prior to the entry of the state court judgment in 2021. Thus, the fourth element is satisfied.

Despite Plaintiff's argument to the contrary, the Court agrees with Defendant that the fifth element—the claims asserted in this lawsuit arise out of the same transaction or occurrence that was the subject matter of the state court lawsuit—is also satisfied. For purposes of res judicata, it does not matter whether the cause of action asserted in the second action is the same as that asserted in the first action or not, as long as it arises out of the same transaction or occurrence that was the subject matter of the first action. La. Rev. Stat. § 13:4231 cmt. a. The subject matter of the first litigation was TCI's alleged wrongful termination of the parties' contract due to questions Mr. Charlot posed regarding the contract's compliance with the Truth-in-Leasing regulations and lost wages due to the contract's failure to comply with those regulations. The causes of action asserted by T.A. Charlot, LLC in the second suit concern that same contract's failure to comply with the Truth-in-Leasing regulations. Therefore, we find that the causes of action in this suit arise out of the same transaction or occurrence that was the subject matter of the prior state court suit.

The main dispute between the parties is over the third element, relating to the identity of parties requirement.[7] Specifically, Plaintiff asserts that this lawsuit is being maintained by a completely different party than the party who filed the state court lawsuit in that Theron Charlot, a natural person in his individual capacity, filed the state lawsuit and T.A. Charlot, LLC, a juridical person, filed the federal lawsuit. (Rec. Doc. 17 at pp. 4–5). Plaintiff also argues that this action is materially different than the state court action because the claims here are asserted solely against TCI, while the state court claims were asserted against TCI and two individuals. (*Id.*). Plaintiff further asserts that TCI's only recourse was to challenge lack of procedural capacity of Mr. Charlot to proceed in state court, and TCI did not do that. (*Id.* at p. 6).

Defendant TCI argues that the parties in both actions are the same because TCI is the Defendant in both actions and because the plaintiffs, Mr. Charlot and T.A. Charlot, LLC, share the same quality of parties, share the same interests, and are in privity with each other. (Rec. Doc. 14-1 at p. 5). TCI asserts that Mr. Charlot and T.A. Charlot's interests fully coincide, and that Mr. Charlot adequately represented his company's interests in the state court litigation by: asserting the same allegations under the same contract that is the subject of the instant action; requesting, and providing responses to, discovery specifically concerning T.A. Charlot, LLC and its drivers; pursuing claims under the contract regarding all of his trucks; and being the managing member of T.A. Charlot,

---

[7] In *Burguieres v. Pollingue*, the Louisiana Supreme Court explained that: "[t]he third requirement of res judicata is that the parties in both suits are the same. Both the civilian law and the common law mandate that there must be 'identity of parties' before the doctrine of res judicata can be used to preclude a subsequent suit." *Burguieres v. Pollingue*, 843 So. 2d 1049, 1053–54 (La. 2003). Therefore, "identity of parties" will be used to refer to the "same parties" res judicata requirement throughout this Order and Reasons.

LLC. (*Id.*; Rec. Doc. 14 ¶ 6). In response to Plaintiff's capacity argument, TCI states that Mr. Charlot was the named party to the contract with TCI; therefore, TCI did not challenge Mr. Charlot's capacity to assert the contract claims and there was no impediment stopping Mr. Charlot from asserting claims under the contract as the virtual representative of his company. (Rec. Doc. 20 at p. 3). To TCI, Mr. Charlot is futilely attempting to avoid a plea of res judicata by reasserting the state court claims in the instant action under the guise of his company. (Rec. Doc 14 ¶ 7).

The Louisiana Supreme Court has explained that the "identity of parties" requirement does not mean that the parties must have the same physical identity, but that the parties must appear in the same capacity. *Burguieres v. Pollingue*, 843 So. 2d 1049, 1054 (La. 2003). Identity of parties can also be satisfied when a privy of one of the parties is involved. *Id.* at n.3 (citing *Welch*, 359 So.2d 154, 156 (La.1978) ("There exists an identity of parties whenever the same parties, their successors, or others appear so long as they share the same 'quality' as parties."); *see also Mandalay Oil & Gas, L.L.C. v. Energy Development Corp.*, 2001-0993 (La. App. 1 Cir. 8/4/04), 880 So.2d 129, 140, *writ denied*, 2004-2426 (La. 1/28/05), 893 So.2d 72.; Peter Wilbert Arbour, Comment, *The Louisiana Concept of Res Judicata*, 34 La. L.Rev. 763, 767 (1974)).

> In *Forum for Equality*, [the Louisiana Supreme Court] explained that "there exists an identity of parties whenever the same parties, their successors, or others appear so long as they share the same 'quality' as parties." [The Court] summarized the scenarios in which a nonparty would be bound by a judgment, including the situation where "the nonparty's interests were adequately represented by a party to the action who may be considered the 'virtual representative' of the nonparty because the interests of the party and the nonparty are so closely aligned."

*Oliver v. Orleans Parish School Bd.*, 156 So.3d 596 (La. 2014) (internal citations omitted). In that situation, the nonparty is deemed a privy of the party to the original action. *Hudson v. City of Bossier*, 766 So.2d 738, 743 (La. App. 2 Cir. 8/25/00).

Louisiana courts have found an identity of parties between natural and juridical persons where the parties are in privity or where one party is the virtual representative of the other for purposes of res judicata. For instance, in *TMF Hotel Properties, L.L.C. v. Crescent City Connections 501(C) 7 Gris-Gris Pleasure Aide & Social Club,* 318 So.3d 756 (La. Ct. App. 4 Cir. 11/28/18), the Louisiana Court of Appeal for the Fourth Circuit found that the identity of parties requirement was met even though the first action named Mr. Robinson, Crescent City's manager, as the plaintiff because Mr. Robinson was privy to Crescent City and both the first and second actions involved the same lease agreement between Crescent City and TMF.

In reaching that conclusion, the court found unpersuasive the fact that the case caption in the first action named Mr. Robinson, an individual, doing business as "Crescent City Connections (501C7)" as the plaintiff and the caption in the second action named Crescent City Connections 501(c)(7), a separate juridical entity. *Id.* The court noted that the caption of the pleading is not controlling; instead, courts look to the substance of the pleading. Further, the court reasoned that because both suits were based on the same lease, the basic conflict is between the real parties in interest—the parties to the lease— Crescent City and TMF. *Id.* 765–66. Lastly, the court rejected TMF's argument that Mr. Robinson lacked standing to file the first suit on behalf of Crescent City because he was not a party to the lease. *Id.* at 766. The court stated that Mr. Robinson's privy to Crescent City defeats that argument and that, even assuming there was no privy, the second suit

is the wrong venue for TMF to challenge Mr. Robinson's standing to bring the first suit. *Id.* Accordingly, the court found that the identity of parties element was met.

Similarly, in this case, the fact that Theron Charlot, an individual, is listed in the caption of the first suit and T.A. Charlot, LLC, a juridical entity, is listed in the caption of this suit is unpersuasive. The substance of the state court petition and the federal complaint reveal that the basic conflict in both actions is between the parties to the lease agreement. Although Plaintiff and Defendant debate the semantics of whom the parties to the lease agreement are, the summary judgment record as a whole leads this Court to find that the true parties in interest in both actions are TCI and T.A. Charlot, LLC. And, as the Court will explain, Mr. Charlot acted as the virtual representative of Plaintiff T.A. Charlot, LLC in the state court suit, adequately representing Plaintiff's interests such that he was a privy of Plaintiff.

Mr. Charlot is the managing member and registered agent of Plaintiff T.A. Charlot, LLC. (Rec. Doc. 14-6 at pp. 121–22; Rec. Doc. 17 at p. 2) Although Plaintiff alleges that Mr. Charlot filed the state court suit in his individual capacity, the state court pleadings and discovery indicate that he was acting on behalf of Plaintiff. For instance, in the state court action, Mr. Charlot requested the production of, and received, documents relating to not just Mr. Charlot himself, but also to two of T.A. Charlot's other drivers for TCI. (Rec. Doc. 14-6 at pp. 92–95). Mr. Charlot also asked TCI to produce "a copy of the Independent Operator's Agreement between T.A. Charlot, LLC and Transportation Consultants, Inc." (*Id.*). Similarly, in response to TCI's discovery interrogatories, Mr. Charlot's answers in regard to his salary and earnings referred to the total amount of money that all three of T.A. Charlot's trucks, or drivers, were earning when working for

TCI. (*Id.* at pp. 117–18) ("My 3 trucks that were previously working at T.C.I. were earning $6,000 per week on average. Since TCI terminated my lease agreement, my trucks sit idly.") ("The amount to be paid to me by TCI for my equipment an[d] drivers['] service was not clearly stated on the face of the lease, nor was there an addendum attached to the lease.").

Plaintiff's interest is in adjudicating the noncompliance of the lease agreement with federal regulations and the mostly monetary consequences that allegedly resulted from that noncompliance. Although Mr. Charlot's state court claims may have been couched in different terms, it is clear that his interests in asserting claims arising out of that contract were closely aligned with that of his company. Plaintiff's own admission that Mr. Charlot signed the lease agreement with TCI in his representative capacity as Plaintiff's managing member evidences just how close this alignment was in the state court suit.

Further, as the company's virtual representative, Mr. Charlot adequately represented the interests of his company in the state court action. The similar, and in some cases identical, evidence used in both actions—such as TCI's letter to Mr. Charlot advising him that the parties' lease agreement has been terminated, the lease agreement itself, Mr. Charlot's complaint to US DOT regarding TCI's alleged violation of the Truth-in-Leasing regulations, and US DOT's letter in response—supports this finding. (Rec. Doc. 14-1 at pp. 15–16).

The Court finds an identity of interests between Mr. Charlot and T.A. Charlot, LLC sufficient to treat them as identical parties with respect to the state court judgment.

Accordingly, and for the foregoing reasons;

  **IT IS ORDERED** that the **Motion to Stay Discovery and Disclosures (Rec. Doc. 15)** filed by Defendant Transportation Consultants, Inc. is **DENIED AS MOOT.**

  **IT IS FURTHER ORDERED** that the **Motion for Summary Judgment Based on Res Judicata (Rec. Doc. 14)** filed by Defendant Transportation Consultants, Inc. is **GRANTED**.

  June 13, 2022

                _____

                JUDGE JAY C. ZAINEY
              UNITED STATES DISTRICT JUDGE